# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:04CV418-C

| | |
|---|---|
| REV. WILLIAM F. KING and GABRIELLE KING, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>UNITY OF CHARLOTTE and ALAN BATTEN, )<br><br>Defendants. ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' "Motion to Dismiss" (document #5) filed October 5, 2004, and "Memorandum in Support ..." (document #8) filed October 22, 2004.

On October 20, 2004, at a time when they had received the Defendants' motion but not their brief, the Plaintiffs, who were then represented by counsel, filed a "Response ..." (document #6).

On June 1, 2005, the Plaintiffs, who were by then preceding pro se, requested leave to file a further response to the Defendants' motion. See Document #17 (letter requesting an additional 30 days to file a response).

In light of the Plaintiffs' pro se status, the undersigned granted them until July 11, 2005 to file an additional response. See "Order" entered June 3, 2005 (document #16). The extended deadline has expired, however, and the Plaintiffs have not filed any further response.

On June 29, 2005, the subject Motion to Dismiss was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and is ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the

undersigned will respectfully recommend that the Defendants' Motion to Dismiss be <u>granted</u>, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is an action to recover damages on state common law claims for slander, invasion of privacy, negligence, and intentional infliction of emotional distress. The Plaintiffs, William F. King and his wife, Gabrielle King, who are now residents of Florida, allege that sometime in December 2002, Mr. King, who was then 67 years-old, was hired by Defendant Unity of Charlotte ("Unity"), which is a member of the Association of Unity Churches, to serve as its Associate Pastor. The Complaint does not state the terms and conditions of Mr. King's employment, although the Plaintiffs allege that they relocated at their expense from Florida to Charlotte, North Carolina, so that Mr. King could assume his duties with Unity on February 1, 2003.

It is undisputed that on March 28, 2003, Unity's Board of Trustees terminated Mr. King's employment, giving as reasons for the termination that he had been "ineffective ... [and] lack[ed] integrity." <u>See</u> Complaint at 5 (document #1). Although the Plaintiffs deny that Mr. King was ineffective or ever conducted himself in an unethical manner, they do not contend that these allegations were ever made public.

Instead, the Plaintiffs base their claims on offensive acts allegedly committed by Defendant Alan Batten, who is a North Carolina citizen and who, at the times relevant herein, served as President of Unity's Board of Trustees.

First, sometime in July 2003, Mr. Batten allegedly orally informed Unity's congregation falsely that Mr. King had been terminated "due to an addiction problem."

2

Second, the Plaintiffs contend that Mr. Batten also subjected Mrs. King, who was then 63 years-old, to unwelcome sexual advances, which as the Defendants point out in their brief, all allegedly took place as the Plaintiffs arrived for or departed from Sunday church services and consisted of two unwelcome hugs and three comments, that is, that "[Mrs. King] looked stunning ... looked like she just stepped out of *Vogue* ... [and] looked sharp." Defendants' "Memorandum in Support ..." at 12 (document #8).

At some point following Mr. King's termination, the Plaintiffs returned to Florida. On September 1, 2003, Mr. King wrote the Unity Board of Trustees, complaining of the treatment he and his wife had received, and offering to resolve the parties' dispute for $6,968.00, a figure which included the Plaintiffs' out-of-pocket expenses related to moving to and from Charlotte. See Exhibit 1 to Defendants' "Memorandum in Support ..." at 12 (document #8).

On August 24, 2004, the Plaintiffs, through their then attorney, Stephen M. Katz, filed their Complaint alleging state law claims for slander, invasion of privacy, negligence, and intentional infliction of emotional distress, but seeking only unspecified "damages" and failing to allege that the $75,000 amount in controversy requirement for federal subject matter jurisdiction had been met.

On October 5, 2004, the Defendants filed their Motion to Dismiss on the basis, among others, that although the citizenship of the parties is diverse, the Plaintiffs have not established that there is $75,000 in controversy and that, accordingly, there is no basis for federal subject matter jurisdiction.

In their Response, the Plaintiffs stated generally that the amount in controversy does exceed $75,000, but did not detail specific damages and offered no other argument or evidence with which the Court could determine the amount of damages that the Plaintiffs reasonably might recover should

3

they prevail on their claims.

On March 23, 2005, Mr. Katz moved to withdraw as the Plaintiffs' counsel.

On March 28, 2005, the undersigned allowed Mr. Katz to withdraw. See "Order" (document #15).

As noted above, on June 1, 2005, the pro se Plaintiffs requested by letter that they be granted an extension to file a further response, but the extended deadline has passed and the Plaintiffs have not filed any supplemental response.

## II. DISCUSSION OF CLAIMS

The existence of subject matter jurisdiction is a threshold issue, and any case lacking a proper basis for subject matter jurisdiction must be dismissed. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998). Accord Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In other words, it is well established that "[t]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000), citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accord Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002). There is no dispute that the Plaintiff's claims arise entirely under state law and, therefore, that the basis for federal subject matter jurisdiction, if any, must arise under what is commonly called diversity jurisdiction.

A case falls within a federal district court's diversity jurisdiction only if diversity of citizenship among the parties is complete – that is, only if no plaintiff and defendant are citizens of

the same State – and the amount in controversy exceeds $75,000. See, e.g., 28 U.S.C. § 1332 (2000); Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 388 (1998); and Carden v. Arkoma Associates, 494 U.S. 185, 187 (1990). The requirements are so absolute that "[n]o party need assert [a lack of complete diversity or the requisite amount in controversy]. No party can waive the defect, or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Schacht, 524 U.S. at 389 (internal citations omitted). Accord Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).

Moreover, the party seeking federal jurisdiction has the burden generally of proving that subject matter jurisdiction exists. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); and Norfolk Southern Ry. Co. v. Energy Development Corp., 312 F.Supp.2d 833, 835 (S.D.W.Va. 2004). In cases where jurisdiction is predicated on diversity of citizenship and where a complaint does not allege a specific amount, but instead seeks only "damages," or even "damages in excess" of a certain dollar figure, the party asserting that jurisdiction exists must prove by the preponderance of the evidence that the amount in controversy requirement has been met. Accord Momin v. Maggiemoo's International L.L.C., 205 F. Supp. 2d 506, 509 (D. Md. 2002) (applying preponderance of evidence standard to amount in controversy); and Gynn v. Wal-mart Stores, 955 F. Supp. 44, 46 (M.D.N.C. 1996) (same).

It is well settled that the existence of subject matter jurisdiction and, specifically, whether more than $75,000 is in controversy is evaluated as of the time the Complaint is filed. Griffin v. Red Run Lodge, Inc., 610 F.2d 1198, 1204-05 (4th Cir. 1979), citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290-93 (1938) (holding that plaintiff could not avoid federal jurisdiction by

decreasing amount in controversy in amended complaint filed post-removal).  Accord Keith v. Clarke American Checks, Inc., 261 F. Supp. 2d 419, 422 (W.D.N.C. 2003).

Applying these legal principles to the record in this case, the Plaintiffs have failed to carry their burden of proving that diversity jurisdiction exists.  Specifically, the Plaintiffs offer no more than their own speculation that the facts, claims, and generalized damages alleged in the Complaint could result in a recovery in excess of $75,000.  Moreover, Mr. King's September 2003 offer to resolve this dispute for less than $7,000, which is the only evidence in the record relating to the Plaintiffs' actual damages in this case, supports an inference that the amount in controversy is, in fact, considerably less than $75,000.

In short, the Plaintiffs have failed to prove by a preponderance of the evidence that any actual damages that they might recover would exceed $75,000, the statutory minimum for federal diversity jurisdiction, and, accordingly, the undersigned will respectfully recommend that the Defendants' Motion to Dismiss be granted.

## III.  ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Court's ruling on this Memorandum and Recommendation and Order.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants'"Motion to Dismiss" (document #5) be **GRANTED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the pro se Plaintiffs; to counsel for the Defendants; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

**Signed: July 20, 2005**

*Carl Horn, III*
_____

Carl Horn, III
United States Magistrate Judge